# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00079-CR

**Charles Lee, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NO. 0995654, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

A jury convicted appellant Charles Lee of the offense of aggravated robbery; the trial court assessed punishment, enhanced by a previous felony conviction, at imprisonment for forty-eight years in the Texas Department of Criminal Justice Institutional Division. *See* Tex. Penal Code Ann. § 29.03 (West 1994). By four points of error, Lee appeals, complaining that the evidence is legally insufficient to support the jury's finding of use of a deadly weapon; the evidence is factually insufficient to support the jury's verdict; the district court erroneously admitted hearsay evidence; and the district court abused his discretion in denying Lee's request for a mistrial based on improper jury argument. We will affirm as reformed in part and reverse and remand in part.

## BACKGROUND

On January 21, 1999, shortly after 3:00 in the afternoon, appellant, Andre Crayton, and Derek Owens entered Excel Vending Company wearing stocking masks. Appellant pointed a gun at Maria Lira, the only person in the office at the time, and ordered her to open the safe.

Appellant took bags of money from the safe and placed them in a gym bag the men brought with them. Meanwhile, Crayton and Owens took bags of money from a nearby trash can that was used as a receptacle for money and put them into a larger gym bag. Appellant then spotted a second safe, ordered Lira to open it, and shoved her towards it, causing her to trip over a computer component. Before Lira could open the second safe, the three men heard someone trying to enter the building through the front door,[1] and Owens and Crayton fled through the back of the building. Recognizing Crayton as a former employee of Excel Vending, Lira shouted his name as he fled. Appellant stayed behind and attempted to place handcuffs on Lira. He cuffed one of her wrists but left without securing the cuff onto the other wrist.

Based on Lira's identification of Crayton and an outstanding arrest warrant, police officers were able to locate Crayton and question him. Crayton confessed to the robbery and implicated Owens and appellant as participants. Based on information provided by Crayton, police secured a search warrant, searched the house of Demetra Nichols, appellant's girlfriend at the time, and recovered a large stack of one-dollar bills, several five-dollar bills, and a bank bag that Lira later identified as the same type of bag used by Excel Vending.

At trial, Lira identified appellant as the man who had pointed the gun at her as he ordered her to open the safe.[2] Appellant was charged with aggravated robbery, along with the lesser

---

[1] Lira testified that the men must have heard someone attempting to enter the building. Neither Crayton nor Owens recalled hearing anyone enter the building. They testified that they departed because Lira was taking too long to open the second safe. Appellant did not testify.

[2] Lira later equivocated as to whether appellant was the individual who first pointed the gun at her.

included offense of robbery. The jury convicted appellant of aggravated robbery, thus finding that appellant used a deadly weapon during the commission of the offense.

**DISCUSSION**

*Factual Sufficiency of Evidence*

Review of a factual sufficiency complaint requires us to presume the evidence is legally sufficient and consider all of the evidence without regard to whether the evidence is favorable to either the State or the appellant. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). We are to weigh the evidence equally, maintaining appropriate deference to the jury's verdict. *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). We may find the evidence factually insufficient only when the record clearly indicates that the verdict is wrong and manifestly unjust. *Id.*; *Clewis*, 922 S.W.2d at 135.

The jury is the exclusive judge of the facts to be proved, the weight to be given the testimony, and the credibility of the witnesses. Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). The jury may accept or reject any or all of the evidence presented by either party. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). The jury is free to draw reasonable inferences from basic facts to ultimate facts. *Welch v. State*, 993 S.W.2d 690, 693 (Tex. App.—San Antonio 1999, no pet.); *Hernandez v. State*, 939 S.W.2d 692, 693 (Tex. App.—Fort Worth 1997, pet. ref'd).

By his second issue, appellant complains of Lira's "dubious in-court identification," arguing that because Lira was never shown any photographic line-ups, she provided inconsistent

testimony regarding her description of appellant, and the evidence demonstrated the robber was wearing a stocking mask during the robbery, Lira's identification of appellant is insufficient to support the jury's verdict. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Thus, it was within the province of the jury to judge Lira's credibility, resolve any inconsistencies, and determine the weight to be accorded her testimony.

Even if we were to agree that Lira's testimony was insufficient to support the jury's verdict, the State presented other evidence from which a jury could have determined that appellant was guilty of the charged offense. Most significantly, appellant's two accomplices, Crayton and Owens, both testified as to appellant's participation in the robbery. According to their testimony, appellant was responsible for planning the robbery and obtaining the weapon used. They also identified appellant as the driver of the car. In addition, the State introduced the bag recovered from Nichols's house and presented evidence that the bag was similar to the ones used by Excel Vending. The jury also heard testimony from both Owens and Keith Williams that while at a barbecue at Nichols's house in January, appellant asked each if he wanted to participate in a robbery of a vending machine business.

Appellant attempted to rebut this evidence with testimony from John Goode, who stated that appellant was at Goode's aunt's house mowing the lawn on the day of the offense and did not leave until about 3:05 or 3:10.[3] According to Goode, it would have taken approximately thirty

---

[3] According to evidence presented at trial, the robbery occurred shortly after 3:00 in the afternoon.

4

minutes for an individual to drive from his aunt's house to the location of the robbery. Thus, appellant argues, he could not have been at the scene of the robbery at the time it occurred.

Appellant also directs us to the testimony of defense witness David Krueger, who testified that appellant had visited his jewelry store before the date of the offense and brought jewelry in need of repair in bank bags similar to the one introduced by the State. Although Krueger could not recount a specific description of the bags appellant used, he testified that the bag introduced into evidence by the State was similar to the ones appellant had previously brought into the store.

Although appellant presents probative evidence indicating he was misidentified, the State presented other probative evidence in support of the jury's verdict. According due deference to the findings of the jury as we must, we cannot say that the proof of guilt is so greatly outweighed by proof to the contrary or is so obviously weak as to undermine confidence in the jury's determination. *See Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We overrule appellant's second issue.

***Hearsay Evidence***

By his third point, appellant contends the trial court erred in admitting testimony based on hearsay not within any exception. *See* Tex. R. Evid. 801(d).[4] Specifically, he complains of testimony by Detective Howard Staha regarding the bank bag admitted into evidence by the State. On direct examination, the State presented Detective Staha with a bag that had been provided by the general manager of Excel Vending and was used to collect money for the business. Detective Staha

---

[4] The rules of evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d).

was asked to examine the bag and compare it to the one recovered during his search of Nichols's house.  In response, Detective Staha answered: "It's the same manufacturer.  Same company made both bags."  Appellant objected to the response, arguing that Staha's statement had to be based on the labels found inside the bag, which constitute hearsay.  On appeal, appellant argues that the label is a "written verbal expression" and was offered to prove a statement outside the courtroom.  We disagree.

Statements that are not offered to prove the truth of the matter asserted, but offered for some other reason, are not hearsay.  *Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999), *cert. denied*, 121 S. Ct. 98 (2000).  The statements made by Staha and the written statements found on the labels in the bags were not offered to prove the truth of the matter asserted; that is, they were not intended to prove that a particular manufacturer made the bags.  Rather, Staha was stating the basis for his belief that the bag collected from the general manager of Excel Vending was similar to the one he recovered during his search of Nichols's house.  *See Jones v. State*, 843 S.W.2d 487, 499 (Tex. Crim. App. 1992) (explaining officer's testimony was not hearsay because it was not offered for truth of matter asserted, but to explain how officer came to suspect appellant, seek an arrest warrant, and then arrest him).  Appellant's third point of error is overruled.

***Improper Jury Argument***

In his fourth point of error, appellant complains of an improper jury argument made by the prosecutor and asserts the trial court erred in overruling appellant's motion for a mistrial.  The offensive remarks made during the State's closing argument are as follows: "Now, I don't know about you all, ladies and gentleman, but I have never had 74 $1 bills just sitting around.  I surely don't

6

carry it in my wallet."[5] Appellant promptly objected to the statement, and the trial court sustained the objection and instructed the jury to disregard the statement "concerning what the prosecutor might or would do." Appellant then moved for a mistrial, which was denied. Appellant argues that this statement injected evidence that was outside the record.

Proper jury argument is limited to (1) a summation of the evidence, (2) reasonable deductions from the evidence, (3) an answer to an argument by opposing counsel, or (4) a plea for law enforcement. *Wilson v. State*, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). Assuming the prosecutor's statement was outside the scope of the record and cannot be characterized as a reasonable deduction from the evidence, in most cases, an instruction to disregard the improper statement will cure any error in the jury argument. *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996). Improper jury argument is reversible error when it: (1) violates a statute, (2) injects new and harmful facts into the case, or (3) is manifestly improper, harmful, and prejudicial to the rights of the accused. *Wilson*, 938 S.W.2d at 59. The prosecutor's statement did not violate a statute and was not manifestly improper, harmful, or prejudicial. While it may have injected new facts into the case, we conclude that the facts were not so harmful as to require reversal and the court's instruction was sufficient to cure the error in the argument. Appellant's fourth point is overruled.

---

[5] The prosecutor was referring to the stack of one-dollar bills recovered during the search of Nichols's house.

## Legal Sufficiency of Evidence of Deadly Weapon

By his first point of error, appellant argues that the evidence was legally insufficient to support the jury's finding that he used a deadly weapon during the commission of the offense. In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the charged offense. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Skillern v. State*, 890 S.W.2d 849, 879 (Tex. App.—Austin 1994, pet. ref'd). The standard of review is the same for both direct and circumstantial evidence cases. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995); *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992). The State may prove its case by circumstantial evidence so long as it proves all of the elements of the charged offense beyond a reasonable doubt. *Easley v. State*, 986 S.W.2d 264, 271 (Tex. App.—San Antonio 1998, no pet.) (citing *Jackson*, 443 U.S. at 319).

Deadly weapon is defined as: "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17) (West 1994). In this case, the jury charge required a finding that appellant used a deadly weapon described as "an air pistol that in the manner of its use or intended use is capable of causing death and serious bodily injury."[6] Thus, the State bore the burden of proving the

---

[6] The jury charge included an alternate description of a deadly weapon as one that is "manifestly designed, made, and adapted for the purpose of inflicting death and serious bodily injury." However, as explained by the court of criminal appeals in *McCain v. State*, "an object that has an obvious purpose apart from causing death or serious bodily injury cannot be a deadly weapon." 22 S.W.3d 497, 502 (Tex. Crim. App. 2000). An object can either be manufactured as a deadly weapon, assembled together with other objects in a physical form that would render it a deadly weapon, or modified from its original form in such a way as to render the object a deadly weapon. *Id*. The State

8

pistol was actually capable of causing death or serious bodily injury in the manner of its use or intended use.

Here, the pistol was not recovered and thus, was not introduced into evidence. Instead, the State presented evidence from various witnesses describing the pistol. First, the complainant, Lira, testified that the individual she identified as appellant covered her face so that she would not scream, turned her around, and pointed a gun at her while ordering her to open a safe.[7] Lira testified that appellant first pointed the gun at her side and then at her neck. Although Lira testified that appellant yelled profanities at her and was abrupt with her, she did not testify that he threatened to kill her. After Lira opened the safe and appellant collected the money, he pushed Lira towards another safe in the office and ordered her to open that one as well. Appellant pushed Lira with enough force that she fell over a computer part. At this point, Lira testified, she could not remember whether appellant was pointing the gun at her or whether appellant was even holding the gun. She added that she was so frightened, she did not know "whether I was afraid for my life or whether I was afraid that they were going to take me with them."

---

presented no evidence in this case to suggest that the air pistol exhibited any of these physical characteristics. Furthermore, as the State's expert witness Story conceded, air pistols are not manifestly designed to be deadly weapons. In its brief, the State did not argue that the air pistol was manifestly designed, made, or adapted for the purpose of inflicting death and serious bodily injury. Our discussion therefore focuses on the second definition of a deadly weapon: "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B) (West 1994).

[7] Although on direct examination, Lira testified that appellant was the person who held the gun the majority of the time and that she believed appellant was the individual who was pointing the gun at her while she was opening the first safe, she later testified on cross-examination that the lighter skinned male (referring to Owens) was the one who initially pointed the gun at her. This was confirmed by police officer Rodolfo Vasquez. He stated that upon questioning Lira shortly after the robbery, she described the lighter-skinned male as the one who initially held the gun; this was reflected in his offense report.

When asked to describe the gun, Lira testified that she could not recall a detailed description of the gun and that she did not know anything about guns. She could remember only that it was black and "kind of square-looking." She had no idea, however, that the gun was an air pistol. She believed the gun was real.

The next witness to testify for the State was Crayton. He testified that appellant picked him up at his house the day of the robbery and that Owens was already in the car. When they arrived at Excel Vending Company, Crayton was the first to get out of the car. He brought a Samsonite bag from the car with him. In the bag were the pistol and a set of handcuffs. Crayton equivocated as to whether he knew the pistol was an air pistol or an "ordinary gun" at the time of the robbery.[8] After the three men entered the building, appellant stood behind Lira with the gun pointed to her neck, telling her to open the safe. Appellant was the only person holding a gun during the robbery, according to Crayton.

Next, Owens testified for the State. Owens confirmed Crayton's story for the most part. He testified that after the men entered the building, he put his hand over Lira's mouth; appellant held the gun; and Crayton stood by the door where he filled a gym bag with money from the nearby trash bin. Owens testified that appellant had the gun pointed at Lira's head while he ordered her to open the safe. Once the safe was open, appellant handed the gun to Owens while appellant collected the money from the safe. According to Owens's version of events, he held the gun last. Owens described the gun as a black air pistol. Appellant told Owens a couple of days before the robbery that

---

[8] On direct examination by the State, Crayton stated that at the time of the robbery, he thought the pistol was an "ordinary gun." However, in response to cross-examination, he admitted that appellant had told him the gun was an air pistol.

10

he intended to use an air pistol to execute the robbery. On cross-examination Owens testified that he did not know whether the air pistol was loaded or in working order.

The State also presented Calvin S. Story, Jr., a forensic firearms examiner with the crime laboratory of the Austin Police Department, as an expert witness. Story testified that because no pistol was submitted to him for examination, he was unable to test-fire the pistol used in this case. However, he has test-fired other air pistols and conducted research on the effects of air pistols on human body parts. Most significantly, Story opined that an air pistol could be considered a deadly weapon if held to an individual's head, face, or neck. He also testified that some air pistols are manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury. He later amended his testimony on cross-examination and declared that an air pistol is not manifestly designed to inflict death or serious bodily injury. He further conceded that the main way to inflict death or serious bodily injury with an air pistol is by shooting someone in the eye. Finally, Story agreed that the reason an air pistol fits the definition of a deadly weapon is because "it can be made or adapted for the purpose of inflicting death or serious bodily injury" and that if the air pistol did not have "a BB"[9] in it and was not used to strike someone, it is not a deadly weapon.

In its brief, the State acknowledges that based on the evidence presented, appellant did not expressly threaten to kill Lira and Lira did not fear that appellant was going to strike her with the air pistol. Nevertheless, the State relies on our opinion in *Delgado v. State*, 986 S.W.2d 306 (Tex. App.—Austin 1999, no pet.), and the court of criminal appeals' decision in *McCain v. State*, 22 S.W.3d 497 (Tex. Crim. App. 2000), to argue that the evidence is sufficient to support the jury's finding of a deadly weapon. We find that both cited cases are distinguishable.

_____

[9] A BB is a particular type of pellet that can be fired by some air guns.

In *Delgado*, the State recovered an air pistol and introduced it at trial. 986 S.W.2d at 307. There was no evidence that the pistol was loaded, and the parties assumed that the pistol was unloaded. *Id.* This Court held that a rational trier of fact, viewing all the evidence in the light most favorable to the verdict, could have found beyond a reasonable doubt that Delgado used or intended to use the air pistol in a manner capable of causing serious bodily injury or death. *Id.* at 308, 309. In doing so, we noted that the State had presented evidence that Delgado brandished the pistol, held the pistol close to the heads of the robbery victims, and threatened to kill them. *Id.* at 308. Acknowledging that the question was a close one, we held that a jury was entitled to take Delgado at his word and believe that he was capable of making good his threats. *Id.* Significantly, we noted that Delgado's discarding of other evidence was insufficient to imply that he could have discarded the BBs or pellets as well. *Id.* The additional evidence, such as the verbal threats, was necessary in order for the State to carry its burden. *Id.* In addition, one of the robbery victims testified that she feared Delgado might use the pistol to bludgeon her. *Id.*

In *McCain*, the defendant kicked in the door of the complainant's kitchen and hit her numerous times with his fist. 22 S.W.3d at 499. The complainant testified that during this attack, she saw what she believed was a knife sticking out of the defendant's back pocket. *Id.* The police later found a butcher knife on the defendant. *Id.* Although the defendant did not touch, brandish, refer to, or overtly display the knife, the court of criminal appeals held that the knife was a deadly weapon and that "the mere carrying of a butcher knife during such a violent attack as occurred in the present case was legally sufficient for a fact-finder to conclude that the 'intended use' for the knife was that it be capable of causing death or serious bodily injury." *Id.* at 503.

12

Here, unlike in *Delgado* or *McCain*, the State failed to produce the weapon. Nevertheless, the State chose to enhance the robbery charge by alleging that appellant used or exhibited "an air pistol" that "in the manner of its use or intended use is capable of causing death and serious bodily injury." In order to carry its burden of proving this allegation beyond a reasonable doubt, the State relied on: (1) the testimony of Lira, in which she provided a general description of a gun and recounted her fear for her life; (2) the testimony of Crayton, in which he equivocated as to whether he thought the gun was real or an air pistol; (3) the testimony of Owens, the only witness who unequivocally and positively identified the weapon as an air pistol, but could not confirm whether the pistol was in working order or was loaded; and (4) the testimony of Story who could only opine based on his experience with air pistols in general, but could not speculate as to the effects of the specific air pistol used in this case because he did not examine or test-fire it. From this evidence, the State surmised, and asked the jury to surmise, that the pistol was an air pistol in working order, that it was loaded, and that it was capable of causing death or serious bodily injury.

As stated in *McCain*, the essential question for legal sufficiency purposes is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 22 S.W.3d at 503 (quoting *Jackson*, 443 U.S. at 319). While in *McCain* the State produced the knife used during the attack and provided the jury with legally sufficient evidence to conclude that the knife was a deadly weapon under the circumstances, in this case, the State did not produce the air pistol. Thus, the State had to present sufficient circumstantial evidence to satisfy the first element of its burden—that appellant used the air pistol described in the indictment—before it could establish the second element—that the intended use of the air pistol was that it be capable of causing death or serious

13

bodily injury. *Cf. Adame v. State*, 37 S.W.3d 141, 144 (Tex. App.—Waco 2001, no pet.) (holding that although State produced air pistol, evidence was legally insufficient to conclude that pistol was deadly weapon); *Delgado*, 986 S.W.2d at 308-09 (holding that where State produced weapon, and although there was no evidence it was loaded, evidence was legally sufficient to conclude pistol was deadly weapon); *see also Easley*, 986 S.W.2d at 271 (holding that State may prove its case by circumstantial evidence so long as it proves all of the elements of the charged offense beyond a reasonable doubt). This it failed to do. What is certain is that appellant had something in his hand resembling a pistol when he entered Excel Vending on January 21, 1999. However, what remains uncertain is what type of pistol was used, whether it was indeed an air pistol, whether it was similar to those examined by Story and described as capable of inflicting serious bodily injury, whether it was in working order, and whether it was loaded.

Even if we were to agree that the State sufficiently established that appellant carried the air pistol described in the charging instrument when committing the robbery, the State's evidence regarding its use or intended use as a deadly weapon is lacking.[10] There was no evidence that the air pistol was loaded. *Cf. Adame*, 37 S.W.3d at 143-44 (holding that whether pistol is loaded is significant in deadly weapon analysis because while knife may be capable of causing death or serious bodily injury, air pistol generally is not unless it is loaded); *Delgado*, 986 S.W.2d at 308 (holding that sufficient circumstantial evidence existed from which jury could infer pistol was loaded). There was

---

[10] The State focuses on the *McCain* court's statement that "the determining factor is that the deadly weapon was 'used' in facilitating the underlying crime" in support of its argument that the mere presence of the air pistol is legally sufficient to characterize it as a deadly weapon. 22 S.W.3d at 503. However, in making this statement, the court of criminal appeals was addressing whether the knife, which was held to be a deadly weapon, was "used or exhibited" during the criminal transaction. *Id.* That is not the issue before us here; hence, we find the State's argument unpersuasive.

no evidence that appellant verbally threatened Lira's life. *Cf. Delgado*, 986 S.W.2d at 308 (holding that where appellant threatened victim's life, jury was entitled to take appellant at his word).[11] And there was no evidence that appellant attempted to bludgeon Lira with the pistol.[12] *Cf. id.* at 308-09 (holding that victim's testimony that appellant's actions caused her to fear appellant would strike her, coupled with evidence that pistol was of sufficient size and weight to inflict serious bodily injury if used as club, supports jury finding that appellant intended to use pistol as deadly bludgeon).

In essence, based on the scant circumstantial evidence presented, the State asked the jury to build an inference upon an inference—first, to infer that appellant carried an air pistol in working order and then that appellant's use or intended use of the air pistol was that it be capable of causing death or serious bodily injury. We hold the State failed to carry its burden and sustain appellant's first point of error.

Because the jury's finding that appellant used a deadly weapon during the commission of the robbery is not supported by the evidence, his conviction for aggravated robbery cannot stand. However, the jury charge also authorized appellant's conviction for the lesser included offense of robbery. We have determined that the evidence was sufficient to support the conviction of this offense. Thus, we will reform the district court's judgment to reflect a conviction for robbery.

---

[11] The State argues that "even without express threats to kill, the appellant got his message across to [Lira]. She thought his weapon was a real gun." The difference between this case and *Delgado*, however, is that even if Lira had reason to believe the air pistol was a deadly weapon, the *jury* had no evidence from which it could reach this conclusion. While in *Delgado*, the jury heard evidence of threats, saw the actual pistol, and discerned that it was in working order, the jury in this case was presented with no evidence from which it could infer that appellant was capable of using the air pistol as a deadly weapon.

[12] Even Story conceded that the air pistol would not be a deadly weapon unless it was loaded with BBs or used as a bludgeon.

*Collier v. State*, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999); *Bigley v. State*, 831 S.W.2d 409, 415 (Tex. App.—Austin 1992), *aff'd*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). Although the punishment assessed does not exceed that authorized for a second degree felony enhanced by a previous felony conviction, we cannot assume that the district court would have assessed the same punishment for the lesser offense. Accordingly, we remand the cause for a new trial as to punishment.

### CONCLUSION

Having sustained appellant's first point of error, we reform the district court's judgment to reflect a conviction for robbery. As reformed, the judgment is affirmed as to the adjudication of guilt. We reverse that portion of the judgment assessing punishment and remand the cause for a new trial as to punishment.

_____

Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Kidd and Yeakel

Reformed and, as Reformed, Affirmed in Part; Reversed and Remanded in Part

Filed: May 31, 2001

Publish