# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00620-CR

**Steven Brian Meunier, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR2001-233, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING

A jury convicted appellant Steven Brian Meunier of felony driving while intoxicated (ADWI@) and sentenced him to fourteen years= confinement in the Institutional Division of the Texas Department of Criminal Justice.[1]  *See* Tex. Pen. Code Ann. '' 49.04, .09 (West Supp. 2002).  He contends that the evidence is insufficient to support his conviction and that the district court erred in admitting certain testimony and in overruling his request for a mistrial.  We will affirm.

### Sufficiency of the Evidence

---

**[1]** If not enhanced by prior convictions, DWI is a misdemeanor offense.  Tex. Pen. Code Ann. ' 49.09(a) (West Supp. 2002).  Meunier=s offense was enhanced to a felony offense due to two prior DWI convictions in 1996 and 1997.  *Id.* ' 49.09(b).  The record also reflects that Meunier has a number of other prior convictions, including four other convictions for DWI and one for possession of cocaine with intent to deliver.  *See* Tex. Health & Safety Code Ann. ' 481.112 (West Supp. 2002).

In his first and second issues on appeal, Meunier contends that the evidence is legally and factually insufficient to support his conviction and shows that he was not intoxicated.

When reviewing the legal sufficiency of evidence, we view the evidence in the light most favorable to the verdict to determine whether a rational finder of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998); *Shelton v. State*, 41 S.W.3d 208, 211 (Tex. App.CAustin 2001, no pet.). A factual sufficiency review asks whether a neutral review of all the evidence, both for and against the finding of guilt, demonstrates that the proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the jury=s determination. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *Givens v. State*, 26 S.W.3d 739, 742 (Tex. App.CAustin 2000, pet. ref=d). The jury as trier of fact resolves any evidentiary conflicts, evaluates witness credibility, and determines the weight to be given the evidence. *Mosley*, 983 S.W.2d at 254; *Shelton*, 41 S.W.3d at 211. We will reverse for factual insufficiency only when the record clearly indicates that the verdict is wrong and manifestly unjust. *Johnson*, 23 S.W.3d at 9. We may not set aside a verdict merely because we believe that another result is more reasonable. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996); *Givens*, 26 S.W.3d at 742.

On April 23, 2000, Deputy Sheriff Ken Joyce saw a Chevrolet pickup truck driving toward his marked patrol car. According to Joyce=s radar, the truck was going about forty-five miles per hour in a forty-mile-per-hour zone. As the truck passed Joyce, he noticed that the registration sticker was partially torn away. Joyce said the torn sticker drew his attention, so he turned around and turned on his lights. Joyce did not see the truck swerving or weaving. The truck stopped in a convenience store parking lot, and the driver, identified as Meunier, got out and walked toward the building. Joyce said Meunier Aused his

hand several times and C and bumped against the building two or three times.@ Joyce ran a check on the truck=s license plates, which were registered to a GMC pickup, not a Chevrolet. The partially torn inspection sticker also belonged to a GMC pickup. License plates registered to the Chevrolet were in the bed of the truck. Joyce found twelve unopened cans of beer in a cooler in the cab of Meunier=s truck and some empty cans in the bed of the truck, but he did not find any other alcoholic beverages elsewhere in the cab.

When Meunier came out of the store with a bag of ice about two minutes later, Joyce asked him about the license plates and sticker and asked to see Meunier=s driver=s license. Meunier replied that he had left his license at home and gave Joyce his name, social security number, and birth date; Joyce ran Meunier=s information and discovered that his license had expired in 1996. Joyce observed that Meunier=s Aeyes were bloodshot and glassy and he had a real strong odor of alcoholic beverage on his breath. His speech was slurred when he tried to answer me. His words were not very clear and distinct.@ Based on those observations and the observation that Meunier Ahit against the wall two or three times@ as he walked to the store, Joyce believed Meunier was intoxicated.

Joyce then asked Officer Steven Morris, a fellow officer at the scene, to perform field sobriety tests on Meunier while Joyce investigated the scene further. Joyce observed portions of the field sobriety testing and observed that Meunier swayed and did not balance well and used his arms for balance even when instructed to keep his arms at his sides. After Morris performed the tests, he and Joyce determined that Meunier was too intoxicated to drive and arrested him for DWI. Joyce brought Meunier to the police station and videotaped him being read his rights and asked to perform a breath test and other

3

sobriety tests. Joyce admitted that the videotape did not show Meunier wavering or teetering as he stood, but noted that Meunier stood with his feet wide apart, which normally "will enable you to maintain your balance better." Joyce testified that Meunier was cooperative at the scene but became uncooperative when brought to the station and refused to answer questions or perform any tests.

Officer Morris testified that he administered field sobriety tests to Meunier, one of which was the horizontal gaze nystagmus test ("HGN" test), during which an officer observes a suspect=s eye movements for six possible indications of intoxication. Morris said that Meunier=s responses indicated all six clues of intoxication. Morris testified that he also had Meunier perform a walk-and-turn test, do a thirty-second one-leg stand, and recite the alphabet. Meunier swayed and wavered during the walk-and-turn test, did not lift his foot as directed for the one-leg stand, and recited the alphabet until "e," then "began reciting random letters and then stopped." Meunier=s performance on the four tests led Morris to believe that Meunier was intoxicated and "not in possession of his full mental and physical faculties." Morris did not videotape the field sobriety tests; he was "pretty sure," but not positive, that his video camera was not working at the time.

Meunier denied that he was intoxicated. He testified that he was "hung over" and tired from being up late and drinking the night before. He said he stubbed his toe as he got out of his truck, explaining why he leaned against the building as he walked. He believed that he had been videotaped performing the field sobriety tests and said he thought he performed well on those tests. He refused to take further tests when he was videotaped at the police station because he was angry.

4

The fact that Meunier was initially cooperative and did not drive erratically does not vitiate the evidence supporting a finding that he was intoxicated. As for Morris=s failure to videotape Meunier=s performance of the field sobriety tests, a fact that Meunier characterizes as a Astartling set of events,@ Morris testified that he did not believe that his video equipment was working at the time. That he could not so testify with complete certainty does not discredit his and Joyce=s testimony about their observations of Meunier=s performance of the tests. Meunier=s testimony that he was not intoxicated and his explanations for his behavior do not invalidate or overwhelm the State=s contrary evidence. Joyce noted the odor of alcoholic beverage on Meunier=s breath and observed that his eyes were glassy and bloodshot and that he seemed to have trouble balancing. Morris testified that Meunier performed poorly on all four field sobriety tests, and Joyce testified similarly of his brief observations of the testing. Whether viewed neutrally or in the light most favorable to the jury=s verdict, the evidence is legally and factually sufficient to support the jury=s guilty verdict. We overrule Meunier=s first and second issues on appeal.

**Morris=s Testimony Regarding the HGN Test**

In his third issue, Meunier contends that the district court committed reversible error by allowing Morris to testify about the HGN test because Morris was not qualified to testify on the subject.

HGN test evidence is sufficiently reliable to be admitted as an indicator of intoxication. *Emerson v. State*, 880 S.W.2d 759, 768-69 (Tex. Crim. App. 1994). A witness qualified by knowledge, skill, experience, training, or education may give an opinion or otherwise testify to scientific, technical, or other specialized knowledge if it will assist the trier of fact to understand the evidence or determine a fact issue. Tex. R. Evid. 702. Although a police officer seeking to testify about a defendant=s performance on

5

an HGN test must be qualified as an expert in the test=s administration and technique, *Emerson*, 880 S.W.2d at 769, it is not necessary that he be certified by the State of Texas if he is qualified by other training or experience. *See Smith v. State*, 65 S.W.3d 332, 344 (Tex. App.CWaco 2001, no pet.); *Kerr v. State*, 921 S.W.2d 498, 502 (Tex. App.CFort Worth 1996, no pet.). A trial court has broad discretion in deciding whether a witness qualifies as an expert and we will not reverse a trial court=s decision on such a matter absent a clear abuse of discretion. *Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990); *Kerr*, 921 S.W.2d at 502.

Morris testified that he learned to give the HGN test in December 1999, after successfully completing a two-day training class held by the Texas Commission of Law Enforcement Standards. He testified that he had not completed the Texas A&M certification course, but that he had Areceived certification from our training office to conduct the test.@ Morris stated that he had administered the test Aseveral hundred times@ and had made between seventy-five and one hundred DWI arrests during his six-year tenure as a peace officer. Based on this record, we cannot hold that the district court abused its discretion by allowing Morris to testify about the HGN test. *See Gullatt v. State*, 74 S.W.3d 880, 882-84 (Tex. App.CWaco 2002, no pet.); *Smith*, 65 S.W.3d at 344; *Kerr*, 921 S.W.2d at 502. We overrule Meunier=s third issue on appeal.

### Should Meunier Have Been Granted a Mistrial?

In his fourth issue, Meunier complains that the district court should have granted him a mistrial following improper jury argument by the State during the punishment phase.

6

After the jury returned a guilty verdict and during closing statements in the punishment stage, the prosecutor stated:

> Let me digress for one moment. The fact that the defendant elected to go to you for punishment doesn≠t mean that you owe him anything. He has chosen you to be the ones to judge him. Why would he choose you instead of a judge? Because he hopes that you will give him a lesser sentence.

Meunier objected to the statement as improper argument, and the district court sustained the objection and instructed the jury to disregard the statement. Meunier then moved for a mistrial, and the district court denied his motion.

Proper jury argument is limited to: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) an answer to argument by opposing counsel, or (4) a plea for law enforcement. *Wilson v. State*, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996); *Lee v. State*, 51 S.W.3d 365, 371 (Tex. App.СAustin 2001, no pet.). Generally, an instruction to disregard an improper jury argument will cure any error. *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996); *Lee*, 51 S.W.3d at 371. Improper jury argument is reversible error when it: (1) violates a statute, (2) injects new and harmful facts into the case, or (3) is manifestly improper, harmful, and prejudicial to the rights of the accused. *Wilson*, 938 S.W.2d at 59; *Lee*, 51 S.W.3d at 371.

Meunier contends that the prosecutor≠s statement was incurably improper, harmful, and prejudicial because it Аrequested the jury to punish Appellant for exercising his right to select the jury for punishment.@ Even if his complaint were correct, Meunier would be entitled only to a new punishment hearing; his conviction would stand. *See* Tex. Code Crim. Proc. Ann. art. 44.29(b) (West Supp. 2002).

7

Having reviewed the record, however, we conclude that the statement was not so harmful as to require reversal and the district court's instruction was sufficient to cure any error in the argument. *See Schulz v. State*, 446 S.W.2d 872, 875-76 (Tex. Crim. App. 1969) (statement that defendant was trying to Ahoodwink@ jury rather than having trial judge assess punishment was not reversible error). We overrule Meunier=s fourth issue on appeal.

We affirm the judgment of conviction.

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed:   August 8, 2002

Do Not Publish