COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

                                                                              )     

TRACEY
LYNN ROBINSON,                            )                    No. 
08-00-00119-CR

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                       161st District Court

                                                                              )

THE STATE OF TEXAS,                                     )                   of Ector County, Texas

                                                                              )

Appellee.                           )                           (TC# B-27,386)

 

O
P I N I O N

 

Tracey
Lynn Robinson appeals his conviction for the offense of aggravated
robbery.  A jury found Appellant guilty
and assessed his punishment at a fine of $5,000 and imprisonment for a term of
sixty-seven years.  The trial court
entered in the judgment an affirmative finding on the use of a deadly
weapon.  Tex.Code Crim.Proc.Ann. art. 42.12, ' 3g(a)(2)(Vernon
Supp. 2002).  We affirm.

FACTUAL SUMMARY








Gary
Miller regularly attends gun shows and sells weapons.  At those shows, he passes out brochures
advertising his business.  Two men came
by his home on East 56th Street in Odessa one afternoon and talked to him for
ten or fifteen minutes about purchasing some 9 mm weapons and lasers.  The men did not have any money with them but
said they would return later.  They left
in a dark maroon Lincoln.  Sometime after
midnight, Miller heard a knock at his door. 
He opened the door because he believed it was his girlfriend returning
from giving a friend a ride home. 
Instead, he saw two black males, the first of whom had a handgun.  Stating it was a robbery,
they pushed their way into his home and began beating him.  A third man soon joined them.  Miller noticed that the second and third
robbers had been at his house earlier that day. 


The
men continued to beat Miller in what he described as a violent struggle.  In an effort to get the men back to his
bedroom where he had a weapon, Miller told the robbers that he had money in his
bedroom.  They carried Miller to the
bedroom.  Once in the bedroom, however,
they tied his wrists together with duct tape and one of the men sprayed him
with pepper spray.  Miller identified
Appellant in the courtroom as the second man who came in the door and as the
one who sprayed him with pepper spray. 
The robbers ransacked Miller=s
home and took a suitcase containing some of his merchandise, his money, car
stereo equipment, and guns.  After the
three men left the bedroom, Miller walked to the front door where he saw Appellant looking outside the door to determine whether it
was safe to leave.  The other two robbers
had already gone while Appellant stayed behind to make sure Miller did not get
up.  When Appellant turned around and saw
Miller, he said for him to get on the floor and not move or he would hurt
him.  Appellant then left.  

Miller
immediately went into the kitchen and used a knife to cut the tape binding his
wrists.  He then got one of his handguns
and went outside to start looking for the robbers.  Instead of the robbers, Miller saw a deputy
sheriff driving by and he flagged him down. 
After hearing Miller=s
story, the deputy sheriff reported the incident over the radio.  Other officers arrived and investigated the
scene.  








Joe
Samford, an Odessa police officer, was dispatched to
Miller=s home at
approximately 1 a.m.  After being briefed
by the deputy sheriff, Samford spoke with Miller who
explained what had happened and gave him a description of the three black male
suspects.  Miller described the first
suspect as 5=8@ tall and 250 pounds, black hair, brown
eyes, medium skin complexion, and wearing a black sweatshirt top with a hood
and black sweat bottoms.  The second
suspect was 5=8@ and 250 pounds, black hair, brown
eyes, medium skin complexion, and wearing a black sweat top and blue
bottoms.  The third suspect was 6=1@
and 160 pounds with a blue hooded jacket. 
After receiving this information, Samford went
outside and began looking for evidence. 
In the alley near Miller=s
home, he found Miller=s
checkbook cover and wallet and a keychain with a pepper spray dispenser which
Appellant had used to spray Miller.  He
also found white socks and the metal suitcase taken from Miller=s home. 
As Samford continued to investigate the area
near Miller=s home,
he found an abandoned brown Lincoln near the intersection of Stoddard and Benefield.  This
vehicle generally matched the description of the vehicle which had been at
Miller=s home
earlier that day.  Several officers,
including Samford, investigated the vehicle.  Inside the trunk, Samford
found a handgun and papers pertaining  to a person named Ron Lee Jones.  

Detective
Buzzy Abalos of the Odessa
Police Department also investigated the aggravated robbery of Miller.  During his investigation, he discovered that
papers bearing the name Ron Lee Jones had been found in the vehicle.  From prior experience, Abalos
knew this to be an alias used by Appellant. 
Abalos put together a photo lineup which
contained Appellant=s
photograph and showed it to Miller.[1]  Abalos contacted
the registered owner of the Lincoln, but he did not claim ownership of the
vehicle.  








At
the time of the robbery, Richard White lived on Stoddard near 56th Street.  At about midnight on December 15, 1998, he
heard a car drive up on the gravel road and then heard car doors opening and
shutting.  His dogs began barking so he
looked out the window.  He saw three
black males near the car.  When his dogs
hit the fence and began growling and barking loudly, the three men hesitated
briefly but continued walking towards Benefield and
56th Street.  White immediately called
the sheriff=s
department to report the suspicious activities. 
John J. Galladay, a deputy sheriff, arrived
within a few minutes and White reported what he had seen.  White remained outside and in view of the
vehicle even after Galladay left momentarily.  Galladay went to
the corner of 56th Street and Benefield to provide
assistance because he had heard radio traffic stating that another unit had
been flagged down by a man who had been robbed. 
Galladay returned within one or two minutes
and other deputies soon arrived.  Within
a few minutes, White saw one of the three men he had seen earlier.  White began yelling over to the deputies that
the man was in the neighbor=s
back yard, but the deputies could not hear him. 
The man then jumped a fence and ran away.  

As
part of his defense, Appellant challenged Miller=s
identification.  In his report to the
police, Miller described the second robber as 5=8@ and 250 pounds.  During cross-examination, Miller was asked to
estimate Appellant=s height
and weight.  He believed Appellant was 5=8@
or 5=9@ and weighed about 190 pounds.  Using a yardstick and scales for a courtroom
demonstration, Appellant presented evidence that he is actually 5=11@
and weighed 200 pounds.  








In
his testimony, Appellant denied robbing Miller. 
He claimed that on the evening of the robbery, he had gone to the Caesar
Gentlemen=s
Club.  A friend, Timothy Johnson, gave
him a ride to the club.  Appellant spent most
of his time with two dancers that evening, Cavatia
and Passion, until the club closed at 2 o=clock. He then took a cab to the
Zodiac Club.  Appellant was not able to
find any of these three witnesses for purposes of testifying at trial nor did
he obtain the cab company=s
records.  He believed Johnson had moved
to California.  During cross-examination,
Appellant admitted that he uses the alias ARon
Jones@ but
maintained that Miller was mistaken in his identification of him as one of the
robbers.  

The
trial court included in its charge an instruction on the law of parties.  The jury rejected Appellant=s alibi defense and found him guilty of
the aggravated robbery of Miller as a party.

LEGAL AND FACTUAL SUFFICIENCY

In
his sole point of error, Appellant contends that the evidence is legally and
factually insufficient to support his conviction because the State failed to
prove that he committed the robbery.[2]  More specifically, he argues that the State
failed to disprove an alternative reasonable hypothesis, namely, his alibi
defense.

Standard of Review

Because
Appellant=s
argument pertaining to legal sufficiency of the evidence relies on the Aoutstanding reasonable hypothesis@ construct jettisoned by the Court of
Criminal Appeals, it is without merit.  See  Geesa
v. State, 820 S.W.2d 154, 161 (Tex.Crim.App.
1991).  We will review the legal
sufficiency of the evidence utilizing the proper standard of review.  








In
reviewing the legal sufficiency of the evidence to support a criminal
conviction, we must review all the evidence, both State and defense, in the
light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 318‑19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa, 820 S.W.2d at 159.  This familiar standard gives full play to the
responsibility of the trier of fact fairly to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic to ultimate facts. 
Jackson, 443 U.S. at 319, 99 S.Ct. at
2789, 61 L.Ed.2d at 573.  We do not resolve any conflict of fact or
assign credibility to the witnesses, as it was the function of the trier of fact to do so. 
See Adelman v. State, 828 S.W.2d 418,
421 (Tex.Crim.App. 1992); Matson v. State, 819
S.W.2d 839, 843 (Tex.Crim.App. 1991).  Instead, our duty is only to determine if
both the explicit and implicit findings of the trier
of fact are rational by viewing all of the evidence admitted at trial in a
light most favorable to the verdict.  Adelman, 828 S.W.2d at 422.  In so doing, any inconsistencies in the
evidence are resolved in favor of the verdict. 
Matson, 819 S.W.2d at 843.  Further, the standard of review is the same
for both direct and circumstantial evidence cases.  Geesa, 820 S.W.2d at 158.

Miller,
who had an ample opportunity to observe Appellant for several minutes in well-lighted
conditions and from only two feet away, made a positive in-court identification
of Appellant as the second robber. 
Miller had no question in his mind that Appellant was the same man.  Papers found in the vehicle tied to the
robbery contained an alias used by Appellant.[3]  This information led police investigators to
suspect Appellant.  This evidence is
legally sufficient for a rational jury to find beyond a reasonable doubt that
Appellant committed the aggravated robbery of Miller.








Factual Sufficiency

When conducting a review of the factual sufficiency of the
evidence, we consider all of the evidence, but we do not view it in the light
most favorable to the verdict.  Clewis,
922 S.W.2d 126, 129 (Tex.Crim.App. 1996); Levario v. State, 964 S.W.2d 290, 295 (Tex.App.‑‑El Paso 1997, no pet.).  We review the evidence weighed by the jury
that tends to prove the existence of the elemental fact in dispute and compare
it with the evidence that tends to disprove that fact.  Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Jones v. State, 944 S.W.2d 642,
647 (Tex.Crim.App. 1996), cert. denied, 522
U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997).  A defendant challenging the factual
sufficiency of the evidence may allege that the evidence is so
weak as to be clearly wrong and manifestly unjust, or in a case where the
defendant has offered contrary evidence, he may argue that the finding of guilt
is against the great weight and preponderance of the evidence.  See Johnson, 23
S.W.3d at 11.  Although we are
authorized to set aside the fact finder's determination under either of these
two circumstances, our review must employ appropriate deference and should not
intrude upon the fact finder's role as the sole judge of the weight and
credibility given to any evidence presented at trial.  See Johnson, 23
S.W.3d at 7.  We are not free to
reweigh the evidence and set aside a verdict merely because we feel that a
different result is more reasonable.  Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App.
1997); Clewis, 922 S.W.2d at 135.








Miller
had an opportunity to view Appellant both in the afternoon when he came to
Miller=s home
and later that evening in well-lighted conditions prior to being sprayed in the
face with the pepper spray.  Miller
admitted that he had some blurry vision after being sprayed but insisted that
he could see what the men were doing. 
Miller was unwavering in his identification of Appellant as the second
robber.  Appellant attempted to counter
this identification by offering an alibi. 
Other than his own testimony, Appellant had no other evidence to support
his claimed alibi although he made some attempt to locate a witness in California.  In evaluating Appellant=s credibility, the jury could have
taken into account his numerous prior felony convictions and misdemeanor
convictions for theft.  It is within the
jury=s
province to judge the credibility of Miller=s
identification of Appellant, resolve any inconsistencies, and determine the
weight to be accorded his testimony.  See
Lee v. State, 51 S.W.3d 365, 369 (Tex.App.‑-Austin 2001, no pet.).  The jury=s
resolution of this issue is not contrary to the overwhelming weight of the
evidence.  Having found the evidence both
legally and factually sufficient to support Appellant=s
conviction, we overrule Point of Error One. 
The judgment of the trial court is affirmed.

 

August 15, 2002

                                                                        


ANN CRAWFORD McCLURE, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew,
JJ.

 

(Do Not Publish)











[1]  The State
asserts that Miller positively identified Appellant from the photo lineup.  Although the attorneys indicated in a hearing
out of the presence of the jury that Miller had identified Appellant from the
photo lineup, the State offered no evidence to that effect.  Therefore, we are unable to consider this Afact@ in our sufficiency review.  See Janecka v.
State, 937 S.W.2d 456, 576 (Tex.Crim.App. 1996), cert.
denied, 522 U.S. 825, 118 S.Ct. 86, 139 L.Ed.2d
43 (1997)(assertions in an appellate brief that are
unsupported by the record will not be accepted as fact).





[2]  Appellant=s brief does not distinguish between the legal and
factual sufficiency standards of review. 
Although the cases he cites were all decided prior to Clewis v. State, 922 S.W.2d 126 (Tex.Crim.App. 1996), and consequently, involve only legal
sufficiency review, he seeks remand of his case for a new trial.  We have elected to review both legal and
factual sufficiency of the evidence.





[3]  The State
maintains in its brief that the papers found in the trunk are federal parole
documents bearing the name Ron Lee Jones and it seeks to draw a connection
between these documents and Appellant=s
admission that he has a federal conviction. 
The papers seized from the vehicle, however, were never introduced into
evidence and none of the witnesses described them.  The prosecutor alluded to the nature of the
papers during cross-examination of Appellant, but his questions are not
evidence.  Further, the State made no
other attempt to directly connect the papers and Appellant.