Affirmed and Opinion filed November 7, 2006








Affirmed and Opinion filed November 7, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01252-CR

____________

 

BRISIO JAVIER PINTOR, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 337th
District Court

Harris County, Texas

Trial Court Cause No. 1028409

 



 

O P I N I O N

Appellant, Brisio Javier Pintor, appeals his conviction for
aggravated robbery.  A jury found him guilty and assessed punishment at fifteen
years in prison.  On appeal, appellant contends that the trial court erred in
denying his motion for directed verdict because the State failed to prove
beyond a reasonable doubt that he used a firearm during the commission of the
offense as alleged in the indictment.  We affirm.








Background

The indictment charged appellant with aggravated robbery,
alleging that appellant:

while in the course of committing
theft of property owned by SUSAN HORR and with intent to obtain and maintain
control of the property, intentionally and knowingly threaten[ed] and place[d]
SUSAN HORR in fear of imminent bodily injury and death, and [appellant] did
then and there use and exhibit a deadly weapon, to-wit: a FIREARM.

At
trial, Susan Horr testified that on April 28, 2005, she was driving home from a
little league baseball game with her son when a car coming from the opposite
direction flashed its brights at her and drove directly toward her vehicle. 
When she slowed down, the other vehicle pulled in front of her and stopped,
blocking her between that vehicle and another vehicle parked on the street.  A
man she identified as appellant got out of the back seat of the car.  Appellant
went to the passenger side of Susan=s car, pointed a
pistol at her son, and waved the pistol around, saying AOpen the door,
*****@ and using other
profanity.  Susan said that she was somewhat familiar with guns, that she Aabsolutely@ believed the
weapon held by appellant to be a real gun, and that it looked similar to a 9
millimeter pistol that her husband used to own.  She refused to exit her car,
and a short time later, her husband, Jim, drove down the same street, stopped,
and exited his vehicle.  At this point, appellant hid the pistol and tried to
wave Jim forward.  Appellant then walked up to Jim, Aheld the gun up to
him,@ and started
yelling.  Susan said that appellant made a reference to Apopping a cap up
your ***.@  Jim tried to calm appellant down, but when Jim
reached into his pockets to get his money, Susan heard appellant=s gun click as
though he had pulled the trigger.  Jim told appellant to calm down and gave him
the money.  They then walked over to the driver=s side of Susan=s car, and when
she rolled the window down, Jim told her to give appellant her money.  She
handed over her money and her cell phone, which appellant also demanded. 
Appellant then returned to the other vehicle and drove away.  Susan testified
that during the encounter she was Ascared to death@ and afraid that
appellant was going to shoot her.








Jim Horr testified that he was in the Marine Corps. for
seventeen years and had qualified as an expert on various weapons, including a
.45 caliber pistol and a 9 millimeter pistol.  He further stated that he
formerly owned a 9 millimeter pistol, and he described the pistol and its
operation.  On April 28, 2005, after staying to gather equipment at the ballfield,
Jim drove toward home.  On the way, he spotted his wife=s car and another
car blocking the road.  A man Jim identified as appellant was standing outside
the vehicles and tried to wave Jim past.  When Jim stopped and exited,
appellant pulled out a gun and pointed it at Jim.  Appellant approached Jim and
said AShut up or I=ll pop a cap up
your ***.@  Jim then heard a metallic click like the hammer of a
pistol.  When he heard the click, he thought that appellant did not have a
round in the chamber or had a misfire.  Jim stated that he could tell it was a
real gun because it was metallic and had matte blueing applied to it, which he
explained is used on guns to prevent light reflection, and the barrel had a
visible silver ring.  Appellant demanded that Jim hand over his money, and Jim
complied while trying to calm appellant down.  Appellant said it wasn=t enough, so Jim
went to Susan=s window and told her to give him her cash.  Appellant
took the cash and then demanded Susan=s cell phone,
which she also handed over.  Appellant then returned to the other vehicle and
left the scene.

Appellant also testified at trial, admitting that he robbed
the Horrs.  He asserted, however, that he did not use a firearm during the
robbery but merely wielded an air pistol only capable of firing yellow plastic
balls.  He said that the gun looked real and used a clip; the clip was stuck,
however, and the pistol did not work properly.  He said that he did not
remember telling Jim Horr that he was going to Abust a cap in his
***,@ but he admitted
the possibility of such a threat.  Appellant further stated that during the
encounter, he cocked the pistol=s hammer three times, and on one of those
occasions, the hammer came down.  The gun was not introduced into evidence and
apparently was never recovered by the police.

Discussion








Appellant contends that the trial court erred in denying
his motion for a directed verdict because the State failed to prove that he
used a firearm during commission of the offense as alleged in the indictment. 
We treat a point of error complaining about a trial court=s failure to grant
a motion for directed verdict as a challenge to the legal sufficiency of the
evidence.  Williams v. State, 937 S.W.2d 479, 482 (Tex. Crim. App.
1996).  Accordingly, we use the well-established standards of review in
assessing the legal sufficiency of the evidence.  See King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000).  A person commits aggravated robbery
if, among other possibilities, he or she uses or exhibits a deadly weapon during
the course of a robbery.  Tex. Penal
Code Ann. ' 29.03(a) (Vernon 2003).  The Texas Penal
Code lists two categories of Adeadly weapons.@  Id. ' 1.07 (Vernon
Supp. 2006); Robertson v. State, 163 S.W.3d 730, 732 (Tex. Crim. App.
2005).  The first category is comprised of those instruments designed to be
deadly weapons, including Aa firearm or anything manifestly designed,
made, or adapted for the purpose of inflicting death or serious bodily injury.@  Tex. Penal Code Ann. ' 1.07(a)(17)(A). 
The second category is comprised of those instruments whose use transforms them
into deadly weapons, including Aanything that in the manner of its use or
intended use is capable of causing death or serious bodily injury.@  Id. ' 1.07(a)(17)(B). 
Here, the indictment specifically charged that appellant used and exhibited a
firearm while committing robbery.  Therefore, the State had the burden to prove
beyond a reasonable doubt that appellant in fact used and exhibited a firearm during
the robbery.  See Thomas v. State, 821 S.W.2d 616, 620 (Tex. Crim. App.
1991); Tidwell v. State, 187 S.W.3d 771, 775-76 (Tex. App.CTexarkana 2006,
pet. stricken).

As discussed above, Susan Horr testified that she had some
familiarity with guns, that she Aabsolutely@ believed
appellant=s pistol was a real gun, and that it looked similar to
a 9 millimeter pistol formerly owned by her husband.  Jim Horr testified that
as a marine veteran, he had extensive experience with weapons, including .45
caliber and 9 millimeter pistols.  He stated that he formerly owned a 9
millimeter pistol, and appellant=s pistol looked
like a 9 millimeter.  He further testified in detail regarding what appellant=s pistol looked
like and why he believed it to be a real pistol.  Additionally, both Susan and
Jim testified to hearing a metallic click, and to hearing appellant say that he
was going to Apop a cap@ in Jim.  Both
observations support the conclusion that the pistol was a real firearm.








Without citation to authority, appellant suggests that Jim
did not qualify as an expert on handguns and thus his opinion regarding whether
appellant=s pistol was a firearm was of no value.  However,
because appellant did not object to Jim=s testimony as
impermissible expert testimony, he has not preserved this issue for appeal.  Tex. R. App. P. 33.1; Salazar v.
State, 127 S.W.3d 355, 362 (Tex. App.CHouston [14th
Dist.] 2004, pet. ref=d).  Furthermore, under Texas Rule of
Evidence 701, a lay witness may offer opinion testimony if based on personal
observations not requiring significant expertise to interpret and not based on
scientific theory.  Tex. R. Evid. 701;
Osbourn v. State, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002).  Indeed,
the personal experience and knowledge of a lay witness may establish that he or
she is capable, without qualification as an expert, of expressing an opinion on
a subject outside the realm of common knowledge.  Osbourn, 92 S.W.3d at
537.  This appears to be exactly what Jim was doing when he testified that
based on his experience with guns, appellant=s pistol was a
real gun.








Appellant cites several cases standing for the proposition
that the State has the burden of proving that an alleged deadly weapon was
capable of causing death or serious bodily injury in the manner of its use or
intended use.  See Davidson v. State, 602 S.W.2d 272, 273-74 (Tex. Crim.
App. 1980); Lee v. State, 51 S.W.3d 365, 371-76 (Tex. App.CAustin 2001, no
pet.); Adame v. State, 37 S.W.3d 141, 143-44 (Tex. App.CWaco 2001), rev=d, 69 S.W.3d 581
(Tex. Crim. App. 2002); Lucero v. State, 915 S.W.2d 612, 614-15 (Tex.
App.CEl Paso 1996, pet.
ref=d); Holder v.
State, 837 S.W.2d 802, 807-09 (Tex. App.CAustin 1992, pet.
ref=d).  However, each
of the cited cases involved an instrument in the second category of deadly
weapons discussed above, i.e., those whose use or intended use converted
them into deadly weapons.  See Tex.
Penal Code Ann. ' 1.07(a)(17)(B); Davidson, 602
S.W.2d at 273-74 (knife); Lee, 51 S.W.3d at 371-76 (air pistol); Adame,
37 S.W.3d at 143-44 (BB gun); Lucero, 915 S.W.2d at 614-15
(screwdriver); Holder, 837 S.W.2d at 807-09 (BB pistol).  Here,
appellant was charged with using or exhibiting a firearm, which is in the first
category of deadly weapons and thus a deadly weapon per se.  See Tex. Penal Code Ann. ' 1.07(a)(17)(A). 
Accordingly, the State did not have to prove that appellant=s pistol was
capable of causing death or serious bodily injury in the manner of its use or
intended use; it only had to prove that the pistol was in fact a firearm.  Thomas,
821 S.W.2d at 620; Tidwell, 187 S.W.3d at 775-76.  This it did through the
testimony of Susan and Jim Horr.

Lastly, regarding appellant=s self-serving
testimony that the pistol was merely an air gun, as sole judge of the
credibility of the witnesses and the weight to be given their testimony, the
jury was free to completely disregard appellant=s testimony and
assign it no weight.  See Sharp v. State, 707 S.W.2d 611, 614 (Tex.
Crim. App. 1986); McCelvey v. State, 143 S.W.3d 522, 531 (Tex. App.CAustin 2004, pet.
ref=d).  Accordingly,
we find that the evidence was legally sufficient to support the conclusion that
appellant used and exhibited a firearm during the robbery.  Appellant=s sole issue is
overruled.

We affirm the trial court=s judgment.

 

 

/s/      Adele Hedges

Chief Justice

 

 

Judgment rendered
and Opinion filed November 7, 2006.

Panel consists of
Chief Justice Hedges and Justices Yates and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).