**Andre Alexander PRICE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–05–01061–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

March 22, 2007.

Staci D. Biggar, Guerrero & Biggar LLP, Houston, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Jessica A. McDonald, Asst. District Atty., Houston, for State.

Panel consists of Justices NUCHIA, KEYES, and HIGLEY.

### OPINION

EVELYN V. KEYES, Justice.

A jury convicted appellant, Andre Alexander Price, of aggravated robbery and assessed punishment at seven years' confinement. *See* TEX. PEN.CODE ANN. § 29.03 (Vernon 2003). In his sole point of error, appellant contends that the evidence is

---

insufficient[1] to prove that he committed aggravated robbery because the State did not prove that he used or exhibited a firearm.

We affirm.

## Facts

At approximately 10:20 p.m. on March 20, 2005, two men robbed Ratnadheer and Pallavi Ravula at their convenience store in Houston, Texas. One man stood watch at the door while appellant forced two customers to lie face down on the floor, pointed a gun at the Ravulas, and ordered them to give him cigarettes and the money in the cash register. Although appellant wore a mask to cover his face, the Ravulas recognized his eyes and voice as those of a regular customer; however, they did not know his name. The next morning, appellant returned to the store seeking store credit from Ratnadheer. When Ratnadheer confronted him about the robbery, appellant apologized, saying "I'm straight. I won't do it next time. Don't tell the cops." Still fearing for his safety, Ratnadheer gave appellant cigarettes without requiring payment. Within a week, Ratnadheer had hired a night security guard and, several months later, the Ravulas sold the store.

On May 5, 2005, as Deputy W. Tipps was working a second job as a security guard at the strip mall in which the Ravulas' store was located, a man identified appellant, who was walking on the side-walk in front of the store, as the man who had robbed the Ravulas' store. Deputy Tipps approached appellant and asked his name and birth date. After confirming that appellant was not wanted, Deputy Tipps let appellant leave and then called Officer R. Sherrouse, who had been assigned to the Ravulas' case, to share this information. Deputy Tipps then prepared two photo arrays and presented them to the Ravulas; both Pallavi and Ratnadheer identified appellant as the man who had robbed them at gunpoint.

Both Pallavi and Ratnadheer testified at trial. Pallavi testified that appellant put a gun in her face and ordered her and her husband to give him money and cigarettes. Ratnadheer similarly testified that appellant, standing about an arms-length away, pointed a gun at him and ordered him and his wife to empty the cash register. Both testified that they feared that appellant might hurt or even kill them. Officer Sherrouse testified that the video of the robbery showed one of the perpetrators using a gun[2] to threaten the Ravulas. The jury also watched the video. However, neither Pallavi nor Ratnadheer gave a physical description of the gun; and the gun was never recovered and was, therefore, not presented to the jury.

## Standard of Review

In his sole point of error, appellant argues that because the State failed to prove that he used or exhibited a firearm the

---

1. Although appellant sets forth the standard for a review of the factual sufficiency of the evidence, his argument is purely a legal one. He makes no argument as to why, even if the evidence were legally sufficient to show that he used or exhibited a firearm during the commission of the robbery, the evidence is so weak that the jury's verdict was clearly wrong and manifestly unjust or why the verdict is against the great weight and preponderance of the evidence. *See Johnson v. State,* 23 S.W.3d 1, 10–11 (Tex.Crim.App.2000). Thus, we will review the evidence for legal sufficiency only.

2. Although Officer Sherrouse neither testified that the particular gun he saw in the video was a firearm nor gave a physical description of the gun, he did acknowledge that "a gun is also considered or called a firearm" and that a firearm is a deadly weapon.

evidence is insufficient to prove that he committed aggravated robbery.

We review the legal sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App.2000); *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App.2000). Although our analysis considers all the evidence presented at trial, we may not reweigh the evidence and substitute our judgment for that of the fact finder. *King,* 29 S.W.3d at 562.

### Analysis

Appellant was indicted on the charge of aggravated robbery. Under the Texas Penal Code, a person commits aggravated robbery if, during the commission of a robbery, he "uses or exhibits a deadly weapon." TEX. PEN.CODE ANN. § 29.03(a)(2). Although section 29.03(a)(2) of the Penal Code only requires the allegation that the defendant used or exhibited a deadly weapon in the commission of the robbery, the State specifically alleged that the deadly weapon in this case was a firearm. *See id.; Gomez v. State,* 685 S.W.2d 333, 336 (Tex.Crim.App.1985). Because the State specifically alleged that a firearm was used, it assumed the additional burden of proving, beyond a reasonable doubt, that appellant employed such a weapon in the commission of the offense. *See Gomez,* 685 S.W.2d at 336 ("[W]here the State alleges unnecessary matter which is descriptive of the essential elements of the crime, the State must prove the descriptive matter as alleged.").

The Penal Code defines a deadly weapon as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PEN.CODE ANN. § 1.07(a)(17) (Vernon Supp.2006). By definition, therefore, a firearm is a deadly weapon. *See id.; Ex parte Huskins,* 176 S.W.3d 818, 820 (Tex.Crim.App. 2005). Section 46.01 of the Penal Code defines a firearm as "any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use." TEX. PEN.CODE ANN. § 46.01(3) (Vernon 2003).

Here, Pallavi's and Ratnadheer's testimony referred only to a "gun." We recognize that the term "gun" may be a broader term than "firearm" when taken out of context and may include such nonlethal instruments as BB guns, blow guns, pop guns, and grease guns. *Davis v. State,* 180 S.W.3d 277, 286 (Tex.App.-Texarkana 2005, no pet.) (citing *O'Briant v. State,* 556 S.W.2d 333, 336 (Tex.Crim.App.1977)). The fact finder, however, is free to draw reasonable inferences and make reasonable deductions from the evidence as presented within the context of the crime. *Id.* Thus, absent any specific indication to the contrary at trial, the jury may draw the reasonable inference or make the reasonable deduction that the "gun" used in the commission of a crime was a firearm. *Id.* (citing *Wright v. State,* 591 S.W.2d 458, 459 (Tex.Crim.App. [Panel Op.] 1979)).

Here, Pallavi testified that appellant put a gun in her face and ordered her and her husband to give him money and cigarettes. Ratnadheer similarly testified that appellant, standing about an arms-length away, pointed a gun at him and ordered him and his wife to empty the cash register. Both testified that they feared that appellant might hurt or even kill them. As a result of the robbery, Ratnadheer hired a night

security guard and the Ravulas ultimately sold the store. Officer Sherrouse testified that the video of the robbery showed one of the perpetrators using a gun to threaten the Ravulas.

We conclude, based on the evidence presented at trial, that a jury could have found beyond a reasonable doubt that the "gun" which appellant used and exhibited during the commission of the robbery was a firearm. *See* TEX. PEN.CODE ANN. §§ 1.07(a)(17), 29.03(a)(2). Given the fear with which the Ravulas reacted to the gun, the testimony of Officer Sherrouse that appellant threatened the Ravulas with a gun, and the fact that no evidence was presented suggesting that the gun was not a firearm, we hold that the jury's finding that appellant used a firearm during the robbery is a reasonable deduction from the evidence presented. *See Davis,* 180 S.W.3d at 286 (citing *Wright,* 591 S.W.2d at 459); *see also Benavides v. State,* 763 S.W.2d 587, 589 (Tex.App.-Corpus Christi 1988, pet. ref'd) ("Appellant's threatening the victim with the gun in itself suggests that it is a firearm rather than merely a gun of the non-lethal variety. . . .").

Appellant argues, however, that because the gun was never recovered, the State was required to present evidence establishing that the gun was a firearm, but failed to do so. To support his argument, appellant relies on two courts of appeals cases. *See Lee v. State,* 51 S.W.3d 365 (Tex.App.-Austin 2001, no pet.); *Williams v. State,* 980 S.W.2d 222 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd). In *Lee,* the State had alleged in the indictment that the deadly weapon used in the commission of the robbery was "an air pistol that in the manner of its use or intended use [was] capable of causing death and

serious bodily injury." 51 S.W.3d at 371. The issue in *Lee,* however, was not whether the weapon used was a firearm and, therefore, by definition, a deadly weapon,[3] as here; the issue was whether the air pistol was actually capable of causing death or serious bodily injury. *Id.* at 371–72.

In *Williams,* the State had specifically alleged in the indictment that the appellant had used a firearm in the commission of the robbery. 980 S.W.2d at 224. On appeal, the appellant argued that the complainant's references to the weapon as a "gun" were insufficient to establish that he exhibited a firearm because a gun and a firearm are not necessarily the same thing. *Id.* at 225. The court of appeals held, however, that the complainant's additional testimony that "the weapon was a 'black, metal-like gun'" and "the barrel of the gun came to a 'square at the front where the bullets come out,'" and the fact that the complainant identified a handgun at trial as similar to the one used in the commission of the robbery provided legally sufficient evidence to support the jury's finding that the weapon used was a firearm. *Id.*

While this evidence physically describing and identifying the gun was certainly relevant to the court's holding, the *Williams* court cited no authority—nor can we find any—holding that this type of evidence was necessary. Rather, as the Corpus Christi Court of Appeals stated in a similar case, "threatening the victim with the gun in itself suggests that it [was] a firearm. . . . The *added* description of the gun . . . *further* negate[d] any reasonable possibility that the gun [was] not a firearm." *Benavides,* 763 S.W.2d at 589 (emphasis added). Thus, the *Williams* court re-

---

3. *See* TEX. PEN.CODE ANN. § 1.07(a)(17) (Vernon Supp.2006); *Ex parte Huskins,* 176 S.W.3d 818, 820 (Tex.Crim.App.2005).

viewed the descriptive evidence not as a factor necessary to finding that the gun was a firearm, but in the light most favorable to the verdict to determine whether, permitting reasonable inferences and deductions from all the evidence presented, the jury could have found that the weapon used by the appellant was a firearm. *Williams*, 980 S.W.2d at 225; *see also Davis*, 180 S.W.3d at 286 (citing *Wright*, 591 S.W.2d at 459).

We overrule appellant's sole point of error.

## Conclusion

We affirm the judgment of the trial court.