

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00244-CR

LORENZO TIMOTHY ALONZO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 63,549-D, Honorable Don R. Emerson, Presiding

April 7, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Lorenzo Timothy Alonzo appeals his conviction for the offense of aggravated robbery, enhanced and the resulting sentence of fifty years of imprisonment.[1] Through one issue, appellant contends the evidence is insufficient to support the aggravating element of use of a deadly weapon.[2] We will sustain

---

[1] TEX. PENAL CODE ANN. §§ 29.03(a) (West 2011), 12.42(c) (West Supp. 2013).

[2] The judgment also contains a deadly weapon finding, also based on appellant's use of a firearm.

appellant's issue, and modify the judgment of conviction to reflect a conviction for the lesser-included offense of robbery and delete the deadly weapon finding. As modified, we will affirm the adjudication of guilt, reverse the portion of the judgment imposing sentence, and remand the cause to the trial court for a new trial on punishment.

Background

Viewed in the light most favorable to the verdict, the evidence shows that on May 4, 2011, appellant entered an Amarillo motel. Approaching the manager on duty he demanded "all the cash you have." As the manager looked at him, appellant displayed a gun. He did not point the gun at the manager but "showed it" to him, then "just put it back down again." He did not make an express threat to use the gun in any way, but the manager was concerned that he would be shot and believed his life was in danger. The manager handed appellant some $250 in cash from a counter drawer and appellant left the premises. Because he was afraid appellant might "pull out that gun again," the manager did not watch appellant leave. He immediately telephoned 9-1-1 for help.

A surveillance video camera and microphone recorded appellant's interaction with the manager. The video and audio recording was placed in evidence at trial and published to the jury while the manager testified. The manager acknowledged the video does not show appellant exhibit a gun but attributed this to the "grainy" quality of the video recording.

About a week later, appellant was arrested by police in Roswell, New Mexico. In the course of giving a recorded audio statement to Roswell police, appellant admitted committing the Amarillo motel robbery. The recorded statement also was played for the

2

jury.  According to appellant's explanation during the interview, "The gun wasn't real, it was a BB gun."  When asked to describe the "BB gun" appellant said "It looked like a High Point."  An officer at trial testified that a "High Point" is a "lower end" firearm with the appearance of "a generic handgun."  The gun appellant displayed to the motel manager was never located.

Appellant was indicted for aggravated robbery.  The aggravating conduct alleged in the indictment was that appellant "did then and there use and exhibit a deadly weapon, to wit: a BB gun, that in the manner of its use and intended use was capable of causing death or serious bodily injury, during the commission of the robbery."

During voir dire, the prosecutor told panel members "the law tells us that a BB gun can, in fact, be used as a deadly weapon."  Later he added, without objection:

> [I]f a person uses a deadly weapon and—or pulls an air soft gun or a BB gun and presents it in a threatening manner, that he wants that—his victim to think of it as a deadly weapon, that's okay as far as the law is concerned. Does everybody here understand that definition? Is everybody here willing to apply that definition to—to the facts in this case?  If the State were to show that it was a BB gun that was used in the particular case, are y'all okay with considering that a deadly weapon?  Anybody here have a problem with that?  All right.

No evidence was admitted during trial establishing that the gun appellant exhibited to the motel manager was a firearm, that a BB gun is a firearm, or that the BB gun appellant displayed was a deadly weapon.

In closing argument the prosecutor explained to the jury:

> Now, you get down to deadly weapon, as we talked about and we talked about in voir dire, sure, it was a BB gun, but there's been lots of people with their eyes put out by BB guns.  There's been lots of small animals killed with BB guns.

\*\*\*

We can't tell you whether it was an actual High Point, or we can't tell you that—you know, that it was just a BB gun. He says it's just a BB gun, so we're going to take him at his word on that, which, again, puts us in kind of an unusual position.

The charge on guilt-innocence instructed the jury in the abstract that a deadly weapon "means a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." The application paragraph, however, limited the application of the definition of deadly weapon, stating:

> [I]f you find from the evidence beyond a reasonable doubt that … [appellant] did then and there, while in the course of committing theft of property, and with intent to obtain and maintain control of said property, intentionally or knowingly threaten or place [the motel manager] in fear of imminent bodily injury or death, and [appellant] did then and there use or exhibit a deadly weapon, to-wit: a bb gun, that in the manner of its use or intended use was capable of causing death or serious bodily injury, then you will find the defendant guilty of Aggravated Robbery as alleged in the Indictment.

Appellant was convicted and sentenced as noted. This appeal followed.

Analysis

We turn to appellant's complaint that the evidence was insufficient to support the deadly weapon aggravating element of the charged offense.

In reviewing the sufficiency of the evidence supporting a conviction, we view all of the evidence in the light most favorable to the court's judgment to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Brooks v. State,* 323 S.W.3d 893 (Tex. Crim. App. 2010) (citing

4

*Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319; *Clayton,* 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State,* 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). Thus, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder. *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State,* 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We must presume that the fact finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson,* 443 U.S. at 326; *Clayton,* 235 S.W.3d at 778.

Under the variant of the offense of aggravated robbery with which the State charged appellant, a person commits the offense if he commits robbery and "uses or exhibits a deadly weapon." Tex. Penal Code Ann. § 29.03(a)(2) (West 2011). A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code Ann. § 29.02(a)(2) (West 2011).

A "deadly weapon" is "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in

5

the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17) (West Supp. 2013).[3] A firearm is any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use. TEX. PENAL CODE ANN. § 46.01(3) (West Supp. 2013); *Vaughn v. State,* 600 S.W.2d 314, 315 (Tex. Crim. App. 1980) (Chapter 46 definition of firearm may be used to assist understanding "deadly weapon" in context of other offenses). "A firearm is a deadly weapon *per se.*" *Ex parte Huskins,* 176 S.W.3d 818, 820 (Tex. Crim. App. 2005). *Cf. Vega v. State,* No. 04-07-00890-CR, 2009 Tex. App. Lexis 4102 (Tex. App.—San Antonio June 10, 2009, no pet.) (mem. op., not designated for publication) (appellant claimed commission of robbery using a BB gun but evidence at trial sufficiently established gun used in robbery was a firearm and not a BB gun).

However, a BB gun is not a firearm. *Vega,* 2009 Tex. App. Lexis 4102, at *3-4 n.2. And it is not a deadly weapon *per se. Adame v. State,* 69 S.W.3d 581, 582 (Tex. Crim. App. 2002).

Here the indictment and charge specified that appellant used a deadly weapon described as a "bb gun, that in the manner of its use or intended use was capable of causing death or serious bodily injury . . . ." Thus, like in *Adame,* proof that the instrument appellant displayed was a deadly weapon depends on the sufficiency of evidence it was capable of causing death or serious bodily injury in its use or intended

---

[3] As the Court of Criminal Appeals has summarized the definitions of deadly weapon contained in subsections (A) and (B) of Penal Code § 1.07(a)(17), "[a] weapon can be deadly by design or use." *Tucker v. State,* 274 S.W.3d 688, 691 (Tex. Crim. App. 2008).

use. *Id.* at 582.[4] This determination is made on a case-by-case basis. *James v. State,* No. 01-10-00693-CR, 2012 Tex. App. Lexis 3019, at *4-5 (Tex. App.—Houston [1st Dist.] Apr. 19, 2012, pet. refused) (designated for publication). For example, the court in *James* observed that in *Campbell v. State,* 577 S.W.2d 493, 495-96 (Tex. Crim. App. 1979), the evidence sufficiently established an air pistol was capable of causing death or serious bodily injury in the manner of use as the complainant testified the defendant pointed the gun at him at close range and threatened to kill him and a ballistics expert testified the gun could kill a person if fired at close range. But in *Mosley v. State,* 545 S.W.2d 144, 145-46 (Tex. Crim. App. 1976), a BB gun was held not to fit the statutory definition of a deadly weapon as the State's expert testified it was not a firearm and while if fired directly into the eye the projectile might cause loss of sight the projectile could not penetrate the skin. And in *James* the testimony of a police firearms expert that the gun in question was capable of propelling pellets at speeds adequate to penetrate the surface tissues of the human body sufficiently established the gun was a deadly weapon under the Penal Code definition. *James,* 2012 Tex. App. Lexis 3019, at *5-6. Likewise, in *Adame*, testimony showed the defendant pointed the BB gun at a

---

[4] Although the abstract definition of deadly weapon in the charge included the "manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" language from Penal Code § 1.07(a)(17)(A), neither at trial nor on appeal does the State suggest that the BB gun appellant used was designed, made or adapted for the purpose of inflicting death or serious bodily injury. *See McCain v. State,* 22 S.W.3d 497, 502 (Tex. Crim. App. 2000) (elucidating the distinctions between the description of deadly weapon in subsection (A) of § 1.07(a)(17) and that in subsection (B)). The State's prosecution of appellant was based on subsection (B).

convenience store clerk, and a police investigator testified the BB gun "could cause serious bodily injury if it were pointed and fired at someone." 69 S.W.3d at 581.[5]

The record in this case contains no proof from which the jury rationally could have concluded the BB gun appellant displayed was capable of causing death or serious bodily injury in its use or intended use. The gun was not produced and its capabilities were not described by the evidence. The manager was placed in fear he would be shot, but there is, most significantly, no evidence that a BB fired from the gun was capable of causing serious bodily injury or death. *See Adame*, 69 S.W.3d at 582. Nor is there evidence of a use or intended use to cause him injury with the gun in some other way. *See Lee v. State,* 51 S.W.3d 365, 375 (Tex. App.—Austin 2001, no pet.) (analyzing similar facts involving "air pistol" used in robbery; noting no evidence of use or intended use of pistol as a "bludgeon" and finding State failed to meet its burden of proof of deadly weapon).

The term "gun" sometimes was used during testimony with respect to the weapon appellant displayed. We note a general rule that, "Testimony using any of the terms 'gun', 'pistol' or 'revolver' is sufficient to authorize the jury to find that a deadly weapon was used." *Wright v. State,* 591 S.W.2d 458, 459 (Tex. Crim. App. [Panel Op.] 1979). *See also Price v. State,* 227 S.W.3d 264, 267 (Tex. App.—Houston [1st Dist.]

---

[5] *Cf. Shelton v. State,* 10 S.W.3d 689, 694-96 (Tex. App.—Amarillo 1999, no pet.) (noting trial testimony of firearms examiner for crime laboratory that, "these pellet guns have sufficient velocity to penetrate through skin and have been known to cause death," and holding "even though an air pistol might not be designed to expel its projectile through the energy generated by an explosion or burning substance, if there is testimony that the air pistol was designed to fire a projectile capable of causing the death of a human being if fired from close range, that is sufficient to comply with the statute").

2007, pet. dism'd) (alleging deadly weapon used by defendant was a firearm); *Edwards v. State,* 10 S.W.3d 699, 702 (Tex. App.—Houston [14th Dist.] 1999, pet. dism'd); *Cruz v. State,* 238 S.W.3d 381, 388 (Tex. App.—Houston [1st Dist.] 2006, pet. refused) (finding in case where indictment alleged defendant used or exhibited a deadly weapon: "to-wit: A FIREARM," evidence was sufficient as victim believed gun defendant used was real and that she would be shot for failing to comply with his demands).

But we find the rule inapplicable here. The term "gun" is much broader than the term "firearm" and may include non-lethal devices such as BB guns, blow guns, pop guns, and grease guns. *O'Briant v. State,* 556 S.W.2d 333, 336 (Tex. Crim. App. 1977); *Arthur v. State,* 11 S.W.3d 386, 389 (Tex. App.—Houston [14th Dist.] 2000, pet. refused). From indictment through the guilt-innocence portion of trial, the State presented its case on the theory that appellant displayed a BB gun to the motel manager during the robbery. The evidence gave the jury no reason to believe the gun appellant used was anything but a BB gun.

Because this record presents no evidence that appellant displayed a deadly weapon to the hotel manager, we sustain appellant's sole issue.

But the absence of evidence of a deadly weapon does not end our analysis. Under the indictment in this case, robbery is a lesser-included offense of aggravated robbery, the difference between the two being the use or exhibition of a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 29.02, 29.03(a)(2) (West 2011). When the evidence is sufficient to prove a lesser-included offense but not the alleged felony offense, an appellate court may modify the trial court's judgment to show a conviction for the lesser-

9

included offense. *Britain v. State*, 412 S.W.3d 518, 521 (Tex. Crim. App. 2013).[6] On the evidence presented the jury could have reasonably found appellant committed robbery of the motel manager. We therefore modify the judgment of conviction to reflect a conviction for robbery and delete the deadly weapon finding and, as modified, affirm the adjudication of guilt. TEX. R. APP. P. 43.2(b). We reverse the portion of the judgment imposing punishment and remand the cause to the trial court for a new trial on punishment. TEX. R. APP. P. 43.2(d).

James T. Campbell
Justice

Do not publish.

---

[6] Although it is not necessary to our authority to reform the conviction to the proven lesser-included offense, *Bowen v. State*, 374 S.W.3d 427 (Tex. Crim. App. 2012), we note that the trial court here charged the jury on the lesser-included offense of robbery.