**Opinion issued March 5, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00810-CR

————————————

## GUILLERMO OLMOS MUNOZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 122nd District Court
Galveston County, Texas
Trial Court Case No. 13CR0151

## MEMORANDUM OPINION

A jury found appellant, Guillermo Olmos Munoz, guilty of the offense of aggravated robbery.[1] After appellant pleaded true to the allegation in an

---

[1] *See* TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2) (Vernon 2011).

enhancement paragraph that he had previously been convicted of a felony offense, the trial court assessed his punishment at confinement for thirty years. In his sole issue, appellant contends that the evidence is legally insufficient to support his conviction.

We affirm.

## Background

The complainant, Sanjula Jain, testified that at around noon on March 8, 2012, she was at work behind the counter at her convenience store, Ocean Food Store, on Galveston Island. A man came into the store while she had several customers, and he "took his time" choosing a frozen sandwich, heating it in a microwave, and choosing a canned beverage. Once the man and the complainant were alone in the store, the man placed the sandwich, the canned beverage, and a bag of potato chips on the counter. He then showed her a "small, black handgun" and "loudly" said, "Give me the F money. Otherwise, I will shoot you." When the man started coming around the counter and towards her, the complainant picked up a chair and started screaming. The man then left the store, abandoning his merchandise on the counter. And the complainant called for emergency assistance.

Galveston Police Department ("GPD") Officer B. Kiamar testified that at around noon on March 8, 2012, he was dispatched to the store to investigate. The complainant described the person who had robbed her as a Hispanic male, five-

feet-ten-inches to six-feet-two-inches in height, weighing 200 to 250 pounds, and wearing a "long-sleeved gray shirt, blue jeans, dark navy-colored baseball-style cap, sunglasses, . . . black boots, and a goatee." Kiamar viewed the store's surveillance videotape, which was published to the jury, and he noted that it corroborated the complainant's testimony and showed a man holding a "small, black, semi-automatic handgun."

GPD Detective S. Pena testified that he reviewed the store surveillance video and obtained fourteen latent fingerprint cards from the items that the robber had touched. Connie Pearson, a GPD fingerprint expert, testified that she submitted the fingerprint cards to "AFIS," an automated fingerprint identification system, and determined that fingerprints found on the sandwich box and beverage can matched those of appellant.

GPD Detective M. Sollenberger, assigned to investigate the robbery, testified that she determined that appellant lived less than two miles from the store, his place of employment was located "less than two minutes" by car from the store, and the total time appellant would have been absent from work, including his time in the store, would have been less than fifteen minutes. Further, Sollenberger noted that there is free access at appellant's place of employment to come and go without being noticed. Finally, she noted that appellant's physical traits were "very similar" to those of the robber in the store surveillance videotape, and she

3

"eliminated the possibility" that appellant had "any business affiliations" with the store.

GPD Officer T. Maffei testified that on the evening of March 8, 2012, he saw appellant driving a blue Ford Explorer, and he initiated a traffic stop. After appellant stopped, he "took off," leading "at least ten" officers and state troopers on a "high risk pursuit." Appellant exceeded the speed limit, ran multiple red lights and stop signs, and continued until a spike strip damaged a tire of the Explorer. Detective Pena, in earlier testimony, noted that a subsequent police search of the Explorer revealed a blue baseball cap, sunglasses, a pair of brown and black boots, and a gray long-sleeved shirt, which "appear[ed] to be the items that [the man] was wearing in the video," along with a shaving kit.

James Moreno, appellant's employment supervisor, testified that on the day of the robbery, appellant was at work at 8:00 a.m. and ended the workday at 4:30 or 5:00 p.m. He noted that the lunch hour began at noon. However, he could not remember whether appellant had remained at work during the lunch hour on the day of robbery.

**Standard of Review**

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond

4

a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

## Sufficiency of the Evidence

In his sole issue, appellant argues that the evidence is legally insufficient to support his conviction because the complainant "was not able to identify [him] as the individual who robbed [her]," there is "no evidence that [he] possessed a weapon shortly before the robbery occurred" and "[n]o weapon was ever recovered," and the only evidence linking him to the robbery was "fingerprints obtained from items handled by the robber; but, the items were also available to be handled by anyone entering the [store]."

A person commits the offense of robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . .

5

intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 2011). A person commits the offense of aggravated robbery if he commits robbery and "uses or exhibits a deadly weapon." *Id.* § 29.03(a)(2). A firearm is considered a deadly weapon. *Id.* § 1.07(a)(17)(A) (Vernon Supp. 2014). Theft is the unlawful appropriation of property with the intent to deprive the owner of the property. *Id.* § 31.03(a) (Vernon Supp. 2014).

The complainant testified that a man, after lingering in her store until he was alone with her, showed her a "small, black handgun" and "loudly" said, "Give me the F money. Otherwise, I will shoot you." She noted that when the man appeared to be coming around the counter toward her, she feared for her life, picked up a chair, and screamed. Officer Kiamar, who viewed the store surveillance videotape, which captured the robbery, testified that it corroborated the complainant's testimony and showed a man holding a "small, black, semi-automatic handgun." Further, the jury saw the store's surveillance video.

Detective Pena testified that he obtained fingerprints from the items that the robber had touched in the store. And Pearson testified that the fingerprints obtained from the beverage can and sandwich box that were left on the counter by the robber matched those of appellant. It is well established that fingerprints alone are sufficient to sustain a finding of guilt if the evidence shows that the fingerprints

6

must necessarily have been made at the time of the offense. *Nelson v. State*, 505 S.W.2d 271, 273 (Tex. Crim. App. 1974); *Washington v. State*, 721 S.W.2d 502, 503 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd). Although appellant asserts that he may have touched these items on another occasion, the jury could have reasonably concluded that it was extremely unlikely that multiple items bearing appellant's fingerprints were placed on the counter by another actor.

Further, Detective Pena testified that a search of appellant's Ford Explorer conducted during the evening of March 8, 2012, revealed a blue baseball cap, sunglasses, a pair of brown and black boots, and a gray long-sleeved shirt, which "appear[ed] to be the items that [appellant] was wearing in the video." We note that the complainant testified that appellant had a goatee at the time of the robbery, Detective Sollenberger testified that appellant "was clean-shaven" at the time of his arrest, and Moreno testified that appellant did not have facial hair at any time during his employment. However, Detective Pena explained that a shaving kit was found in appellant's Explorer at the time of his arrest.

In regard to appellant's assertion that there is "no evidence that [he] possessed a weapon shortly before the robbery occurred" and "[n]o weapon was ever recovered," we note that proof that he possessed a weapon before the robbery and recovery of the weapon itself were not required to support his conviction. *See Price v. State*, 227 S.W.3d 264, 266–67 (Tex. App.—Houston [1st Dist.] 2007, pet.

dism'd) (holding testimony defendant used "gun" legally sufficient to support aggravated robbery conviction); *see also Carter v. State*, 946 S.W.2d 507, 510 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd) ("Testimony using any of the terms 'gun,' 'pistol,' or 'revolver,' is sufficient to authorize the jury to find that a deadly weapon was used.").

Finally, we note that Officer Maffei testified that appellant evaded arrest, leading "at least ten" officers and state troopers on a "high risk pursuit," during which appellant exceeded the speed limit, ran multiple red lights and stop signs, and did not stop until a second spike strip damaged a tire on his Ford Explorer. "Evidence of flight evinces a consciousness of guilt." *Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007).

The jury is the sole judge of the facts, the credibility of the witnesses, and the weight to be given the witness's testimony. *Williams*, 235 S.W.3d at 750. Again, we act only to ensure that the jury reached a rational decision. *See Moreno*, 755 S.W.2d at 867. From the evidence presented, the jury could have reasonably concluded that appellant, in the course of committing a theft from the store, and with intent to obtain or maintain control of the store's money, intentionally threatened or placed the complainant in fear of imminent bodily injury or death and that appellant used or exhibited a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03(a)(2); *Cruz v. State*, 238 S.W.3d 381, 387–88 (Tex. App.—Houston [1st

Dist.] 2006, pet. ref'd).  Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Massengale.

Do not publish.   TEX. R. APP. P. 47.2(b).