

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00178-CR

BRANDON LEE MANUEL                                    APPELLANT

V.

THE STATE OF TEXAS                                         STATE

----------

### FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
### TRIAL COURT NO. CR13238

----------

### MEMORANDUM OPINION[1]

----------

Appellant Brandon Lee Manuel appeals his convictions for aggravated assault by threat with a deadly weapon and unlawful possession of a firearm by a felon. In two points, he challenges the sufficiency of the evidence to support his convictions. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background

After jet skiing on Lake Granbury, Randy James and his fiancée, Tammy Thompson, returned to James's home on a canal just off the lake. While James was docking the jet ski, he and Thompson heard someone yelling for help across the canal. Thompson started swimming towards the person but got tired. James dove in and swam across the canal.

James testified that when he got to the other side of the canal, he saw appellant in the middle of a yard. James asked, "Are you okay? I thought somebody was drowning." Appellant replied, "I've been in prison 11 years," and started walking quickly towards the dock. As appellant got closer to James, James realized appellant had a gun in the waistband of his shorts. Appellant pointed the gun at James and said, "This is your unlucky day. You're fixing to meet your maker. You're going to die." James testified that the gun was black and looked like a .22 or .38 snubnose. He further testified that he owned guns like the one appellant had. On cross-examination, he testified that he could not tell if the gun was a revolver or a semi-automatic.

James backed away slowly at first and then swam as fast as he could back to his dock. When he got back to his dock, James told Thompson to get out of the water because appellant had a gun and was crazy or on something. Thompson testified that as James was swimming back, he yelled to her, "Turn around. He's crazy. He's got a gun. He tried -- he threatened to shoot me."

2

Thompson testified that appellant started to yell at her and that he had "what looked like a gun in his belt."

Mike Batts, who owned a lake house in the neighborhood, testified that he was doing yard work in his front yard when he heard someone yelling for help. According to Batts, his house is approximately seventy-five yards from James's house. Batts ran around to his backyard, grabbed a pair of binoculars, looked through them, and saw appellant looking down at the water where James was; appellant appeared upset. Batts testified that it looked like appellant was having a heated discussion or argument with James and that the handle of a pistol was sticking out of appellant's shorts. Batts could only see the handle of the gun; he could not see the barrel but said "it was a definite gun." Batts never saw appellant take the gun out of his waistband.

Batts saw Thompson get out of the water and run into the house with James behind her. Batts testified that James looked scared and upset. On cross-examination, Batts admitted that he could not hear what James and appellant were saying to each other, but their voices had an angry tone. He also admitted that he could not tell from a distance whether the gun was a semi-automatic or a revolver.

James testified that after he got out of the water, appellant continued to wave the gun around, and James thought appellant was going to come across the canal. Thompson called 911. Thompson testified that while she on the phone with 911, appellant was pacing and hollering; sometimes, appellant had

3

the gun at his side, and at other times, he was pointing the gun towards James and Thompson. Thompson described the gun as black and rectangular; she said it was not a revolver.

While on the phone with 911, Thompson saw appellant climb up and down a tree and then walk up to a house and disappear. Jessica Montgomery was in the house with her two children. Montgomery testified that she heard yelling and cussing outside. She looked out the window and saw appellant standing at the edge of a retaining wall, yelling at her neighbor who was in the water. Montgomery testified that she saw a black gun tucked into appellant's waistband and that he kept yelling, cussing, and acting like he was going to reach for the gun. Montgomery was scared and called 911. On cross-examination, Montgomery testified that she got "a fairly good look" at the gun and that when the 911 operator asked whether the gun was a pistol or a rifle, Montgomery said she did not know. Montgomery did not see appellant pull the gun from his waistband or hear him directly threaten her neighbor.

Thompson testified that after appellant disappeared behind the house where Montgomery and her children were, she saw a silver truck drive away. Charles Etheridge, whose daughter owns a house in the neighborhood, testified that he was outside of her house working on a boat when appellant stopped the silver truck he was driving and got out to talk to Etheridge about his boat. Appellant started talking strangely about Jesus, and after appellant told Etheridge that Etheridge was going to die that day because someone was coming to kill

him that night, Etheridge went inside his home and locked the door. Etheridge testified that appellant did not show him a firearm or point one at him and that he did not see any weapons on appellant's person.

Rachel Carter, a neighborhood resident, testified that a truck drove slowly through her front yard and that appellant jumped out of the truck right before it went into the lake. Carter asked appellant if he was okay, but appellant appeared to be having a conversation with someone who was not there. He said, "I'm Jesus and you're Jesus and we're all Jesus." Carter called 911 and handed appellant her phone so that he could talk to the operator about his vehicle. Carter testified that when she handed the phone to appellant, she did not notice a weapon of any kind and that appellant did not threaten her.

When Randy Johnston, a lake ranger with the Brazos River Authority, arrived on the scene, he secured appellant and frisked him. Ranger Johnston testified that did not find any weapons on appellant. Deputy Paul Knight with the Hood County Sherriff's Office arrested appellant. Deputy Knight testified that he helped search the area (including the tree appellant climbed) and appellant's truck but did not find a gun. William Watt, an investigator with the Hood County Sheriff's Office, led a team of seven or eight divers that searched the lake for the gun for approximately eleven hours over a two-day period. The team did not find the gun. Ranger Johnston and Investigator Watts both testified that it was difficult to find an object like a gun in Lake Granbury. No gun was introduced into evidence at the trial.

5

The jury found appellant guilty of aggravated assault by threat with a deadly weapon and unlawful possession of a firearm by a felon. Appellant pled true to the enhancement and habitual allegations, and the jury assessed punishment at seventy years' confinement in the Institutional Division of the Texas Department of Criminal Justice for each offense. The trial court sentenced appellant accordingly, with the sentences to run concurrently.

**Standard of Review**

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we

6

determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49.

**Sufficiency of the Evidence that Appellant Used or Exhibited a Deadly Weapon**

In his first point, appellant complains that the evidence is insufficient to support his conviction for aggravated assault by threat with a deadly weapon because there was insufficient evidence that he used or exhibited a handgun when he threatened James. Specifically, he argues that the jury's finding that he had a deadly weapon is based on speculation by James, Thompson, Batts, and Montgomery "of what they saw from a distance or under the influence,[2] without any evidence of finding a gun, examining a gun, or without any consistent description of a gun." He further asserts that the gun could have been a BB gun, an Airsoft gun, or a cell phone.

To prove aggravated assault by threat, the State must prove that the person (1) intentionally or knowingly threatened another with imminent bodily injury and (2) used or exhibited a deadly weapon during the commission of the assault. Tex. Penal Code Ann. § 22.01(a)(3) (West Supp. 2016), § 22.02(a)(2)

---

[2]Thompson testified that she thought she and James had consumed alcohol earlier in the day on the day of the incident "but not much." She knew that they "had a few" but could not remember how many. James testified that he could not remember having anything to drink that day and was not aware that Thompson had anything to drink.

(West 2011). A firearm is a deadly weapon per se. *Id.* § 1.07(a)(17)(A) (West Supp. 2016) (defining "deadly weapon" as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury").

James testified that appellant pointed a black gun at him that looked like a .22 or .38 snubnose and said, "This is your unlucky day. You're fixing to meet your maker. You're going to die." He further testified that he owned guns like the one appellant had. Thompson, Batts, and Montgomery also testified that appellant had a gun. The jury, as the sole judge of the weight and credibility of the evidence, weighed and considered these witnesses' distance from the incident, their varying descriptions of the gun, and, as to Thompson and James, whether they had been drinking that day. Based on the evidence, the jury could draw the reasonable inference that appellant used or exhibited a firearm while threatening James. *See Price v. State*, 227 S.W.3d 264, 266 (Tex. App.—Houston [1st Dist.] 2007, pet. dism'd) ("[A]bsent any specific indication to the contrary at trial, the jury may draw the reasonable inference or make the reasonable deduction that the 'gun' used in the commission of a crime was a firearm."); *Rogers v. State*, 795 S.W.2d 300, 303 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (holding that cashier's testimony that "she saw 'enough of it to know it was a gun,'" "was sure it was a gun," that it was a silver handgun, and that the gun used looked the same or similar to a photograph of a pistol the State showed the cashier at trial was sufficient evidence to show that appellant

8

possessed a firearm during robbery); *see also Barrett v. State*, No. 02-13-00200-CR, 2014 WL 2538803, at *4 (Tex. App.—Fort Worth June 5, 2014, pet. ref'd) (mem. op., not designated for publication) ("The complainant testified that the object thrust into her side was a gun, that it was silver, and that it looked like the guns worn by police officers. Based on this testimony, the jury could draw the reasonable inference that appellant used a real gun."). Additionally, their testimony was sufficient to prove appellant used or exhibited a firearm even though the gun was never found. *See Carter v. State*, 946 S.W.2d 507, 509–11 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd) (holding that even though gun was never recovered, victims' testimony was sufficient to prove defendant used a firearm).

Viewing all the evidence in the light most favorable to the verdict, we conclude and hold that a rational trier of fact could have found that appellant used or exhibited a deadly weapon. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. We overrule appellant's first point.

**Sufficiency of the Evidence that Appellant Possessed a Firearm**

In his second point, appellant complains that the evidence was insufficient to support his conviction for unlawful possession of a firearm because there was insufficient evidence that he possessed a firearm. Specifically, appellant argues that the evidence is insufficient because "no firearm of any type was ever found or examined" and there was no examination of the alleged firearm to determine whether it was a firearm or a BB gun, Airsoft gun, or a cell phone. Appellant also

9

questions the reliability of the witnesses who testified that they saw him with a gun and points out some witnesses testified that he did not have a gun.

To prove unlawful possession of a firearm by a felon, the State is required to prove that the person (1) possessed a firearm (2) "after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later." Tex. Penal Code Ann. § 46.04(a)(1) (West 2011). "'Firearm' means any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use." *Id.* § 46.01(3) (West Supp. 2016).

The penal code defines "possession" as "actual care, custody, control, or management." *Id.* § 1.07(a)(39). A person commits a possession offense only if he voluntarily possesses the prohibited item. *Id.* § 6.01(a) (West 2011). Possession is voluntary if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control. *Id.* § 6.01(b). Even if the firearm is not found on the defendant's person or is not seen in the defendant's exclusive care, custody, control, or management, the State can still prove possession by offering additional, independent facts and circumstances that link the defendant to the firearm. *Bates v. State*, 155 S.W.3d 212, 216–17 (Tex. App.—Dallas 2004, no pet.); *see Villarreal v. State*, Nos. 02-07-00329-CR, 02-07-00330-CR, 2009 WL

10

671042, at *1 (Tex. App.—Fort Worth Mar. 12, 2009, pet. ref'd) (mem. op., not designated for publication) ("The . . . links doctrine also applies to the possession of firearms.").

James testified appellant pointed a black gun at him that looked like a .22 or .38 snubnose; Thompson, Batts, and Montgomery also testified that appellant had a gun, even though they gave varying descriptions of the gun.  Again, the jury, as the sole judge of the weight and credibility of the evidence, weighed and considered these witnesses' distance from the incident, their varying descriptions of the gun, and, in the case of Thompson and James, whether they had been drinking that day.  Viewing this evidence in a light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that appellant possessed a firearm.  *See Tapps v. State*, 257 S.W.3d 438, 445–46 (Tex. App.—Austin 2008) (op. on reh'g), *aff'd*, 294 S.W.3d 175 (Tex. Crim. App. 2009) (holding eyewitnesses' testimony purporting to have seen defendant with firearm sufficient to prove possession even though firearm was never recovered); *see also Hutchings v. State*, 333 S.W.3d 917, 920–22 (Tex. App.—Texarkana 2011, pet. ref'd) (holding that evidence was sufficient to show that defendant possessed a firearm when witnesses identified defendant, said they saw him with a gun, and described the gun); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.  We overrule appellant's second point.

## Conclusion

Having overruled both of appellant's points, we affirm his convictions.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GABRIEL and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 22, 2016